UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                    Plaintiff,

      v.

ANGELO LOUISSAINT and
JENNIFER JOHNSON,

                  Defendants.

_____

REPORT & RECOMMENDATION

12-CR-6081W

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated June 25, 2012, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 2).[1]

On June 14, 2012, the grand jury returned a thirty-three page, eleven-count indictment against Sean Ola-Ojo ("Ola-Ojo"), Angelo Louissaint ("Louissaint"), and Jennifer Johnson ("Johnson").[2]  (Docket # 1).  Count One charges the defendants with conspiracy to commit mail and wire fraud from approximately May through September 2008, in violation of 18 U.S.C. § 1349.  (Id.).  Defendants Louissaint and Johnson are also charged with two counts of mail fraud and four counts of wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, respectively.  (Id.).  The final counts of the indictment, Counts Ten and Eleven, charge defendant

---

[1]  With respect to defendants Angelo Louissaint and Jennifer Johnson, this case was subsequently transferred to United States District Judge Elizabeth A. Wolford.  (Docket ## 81, 84).

[2]  Pursuant to a plea agreement with the government, Ola-Ojo pleaded guilty to a one-count felony information charging him with structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3).  (Docket ## 52, 53).  Sentencing has been adjourned without date, presumably pending resolution of the charges against defendants Louissaint and Johnson.

Louissaint with money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1957, respectively. (*Id.*).

Currently pending before this Court for report and recommendation is the joint motion by defendants Louissaint and Johnson (the "defendants") to dismiss the indictment for lack of venue. (Docket ## 87, 97). The government opposes the motion. (Docket # 90).

At the same time that defendants filed their motion to dismiss, they also moved for a bill of particulars. (Docket ## 87, 97). By Decision and Order dated January 4, 2016, this Court granted in part the motion for further particularization. (Docket # 106). The district court denied the government's objections to the Decision and Order (Docket # 111), and the government filed its bill of particulars on February 11, 2016. (Docket # 114). Both parties thereafter filed supplemental memoranda of law relating to the pending motion to dismiss. (Docket ## 116, 117).

For the reasons discussed below, I recommend denial of defendants' motion to dismiss.

## DISCUSSION

## I.    The Indictment

The indictment charges defendants Ola-Ojo, Louissaint, and Johnson with conspiring to defraud Flaherty Funding Corporation ("Flaherty Funding"), a licensed mortgage company based in Rochester, New York, during a five-month period in 2008. (Docket # 1 at 3-5, ¶¶ 2-3). According to the indictment, the object of the conspiracy was to induce Flaherty Funding to make mortgage loans based upon false and fraudulent mortgage applications and supporting documents. (*Id.* at 4, ¶ 3). The indictment specifically alleges that defendants,

2

among other things, recruited straw purchasers, prepared and submitted false statements misrepresenting that the straw purchasers had contributed their own funds as down payments, prepared and submitted false and fraudulent mortgage applications and sales contracts, and prepared and executed false and fraudulent closing documents.  (*Id.* at 5-6, ¶¶ 4-9).  As a result of defendants' conduct, Flaherty Funding provided mortgages to purchasers who did not qualify for the loans and did not intend to occupy the premises, despite representations to the contrary. (*Id.*).  The indictment further alleges that "[t]he proceeds of the mortgage loans were distributed among the members of the conspiracy."  (*Id.* at 6-7, ¶ 9).

With respect to defendants' roles in the conspiracy, the indictment alleges that Louissaint worked as an independent contractor who provided services to Vista Mortgage, a mortgage brokerage company in Queens, New York.  (*Id.* at 1-2, ¶¶ 2, 4).  Among other things, he found straw purchasers and prepared mortgage applications.  (*Id.*).  According to the indictment, Johnson worked with Louissaint.  (*Id.* at ¶ 5).

The conspiracy count (Count One) identifies five real estate transactions that were undertaken in furtherance of the conspiracy.  (*Id.* at 7-18, ¶¶ 11-47).  The first was a purchase by Bernard Lawson, a straw purchaser allegedly recruited by Louissaint, of a residential property at 883 Herkimer Street, Brooklyn, New York.  (*Id.* at 7-9, ¶¶ 11-18).  According to the indictment, defendants submitted to Flaherty Funding a mortgage application and supporting documents in Lawson's name that misrepresented Lawson's employment, income, assets, as well as his intention to occupy the property.  (*Id.*).  Johnson allegedly issued a false and fraudulent title insurance policy, which defendants knew was false because the purported seller did not actually own the property.  (*Id.*).  The transaction closed on July 8, 2008, at which time various materially false and fraudulent closing documents were executed that induced Flaherty Funding to provide

3

a mortgage loan to Lawson in the amount of $646,300. (*Id.*). The closing documents were delivered to Flaherty Funding in Rochester on or about July 8, 2008, and "defendants divided the fraudulently acquired mortgage loan proceeds among themselves and others." (*Id.*).

The indictment asserts that defendants engaged in similar conduct with respect to the purchase by a straw purchaser, whose recruitment was directed by Louissaint, of a dwelling located at 16404 107th Avenue, Jamaica, New York, on or about September 12, 2008. (*Id.* at 10-12, ¶¶ 19-28). At the September 12, 2008 closing, Flaherty Funding provided a mortgage loan in the amount of $533,850, based upon materially false and fraudulent documents that were executed at the closing and subsequently delivered to Flaherty Funding in Rochester. (*Id.*). The indictment alleges that defendants again divided the mortgage proceeds among themselves and used a portion of the proceeds to purchase another property in Bronx, New York. (*Id.*). Johnson's alleged role in this transaction was to assist in obtaining a cashier's check that was altered to make it appear that it had been used by the straw purchaser as a down payment. (*Id.*).

The third real estate transaction described in the indictment involved a purchase by a straw purchaser of 1785 Pacific Street, Brooklyn, New York, on or about September 10, 2008. (*Id.* at 13-15, ¶¶ 29-37). For this purchase, Flaherty Funding provided a mortgage loan to the straw purchaser in the amount of $533,850. (*Id.*). Neither defendant Louissaint nor defendant Johnson is specifically named in the allegations relating to this purchase, and neither is charged with any substantive offenses relating thereto. (*Id.*).

The final two transactions identified in Count One were not completed. (*Id.* at 15-18, ¶¶ 38-47). In both – attempted purchases of 29 Beach Street, Copiague, New York and 117-48 135th Street, South Ozone Park, New York – Louissaint allegedly directed the recruitment of the straw purchasers. The indictment also alleges that defendants caused the

preparation and submission to Flaherty Funding of mortgage applications containing misrepresentations as to the purchasers' employment, income and assets, as well as fraudulent sales contracts. (*Id.*). Defendant Johnson is not specifically mentioned in the allegations related to these attempted transactions.

Two of the substantive mail fraud counts and two of the substantive wire fraud counts with which defendants Louissaint and Johnson are charged relate to the transactions for 883 Herkimer Street and 16404 107th Avenue. Each mail fraud count (Counts Two and Four) charges that on or about the date of the closing for each property:

> the defendants knowingly caused to be delivered to Flaherty Funding in Rochester, New York, by commercial interstate carrier according to the direction thereon, the closing documents for the transaction.

(*Id.* at 19, ¶ 3; 21, ¶ 3). Each wire fraud count (Counts Three and Five) charge:

> the defendants did transmit, and cause to be transmitted, by means of wire communication in interstate commerce writings, signs, signals, and pictures, that is, the items described below:
>
> > • Notice of Loan Approval for [straw purchaser] provided to Flaherty Funding in Rochester, New York, by MGIC Investor Services Corporation in Pennsylvania [on 6/27/08 for Count Three; on 8/12/08 for Count Five].
> >
> > • Wire Transmission Form regarding [straw purchaser] mortgage loan provided by Flaherty Funding in Rochester, New York, to First Star Bank in Texas [on 7/8/08 for Count Three; on 9/11/08 for Count Five].

(*Id.* at 20, ¶ 3; 22-23, ¶ 3).

The remaining two substantive wire fraud charges against defendants Louissaint and Johnson (Counts Eight and Nine) relate to the two transactions that did not close. The jurisdictional interstate wiring identified in Count Eight (which relates to the attempted purchase of 29 Beach Street) is an August 8, 2008 Notice of Loan Approval from MGIC Investor Services

Corporation in Pennsylvania to Flaherty Funding in Rochester.  (*Id.* at 26, ¶ 3).  The jurisdictional wiring identified in Count Nine (which relates to the attempted purchase of 117-48 135th Street) is a September 22, 2008 Statement of Credit Denial by JPMorgan Chase Bank in Florida to Flaherty Funding in Rochester.  (*Id.* at 27, ¶ 3).

Finally, the two substantive money laundering offenses with which defendant Louissaint is charged (Counts Ten and Eleven) both concern a wire transfer of $173,951.86 relating to a September 12, 2008 transaction involving 16404 107th Avenue.  (*Id.* at 28-30).  The wire transfer from HSBC Bank to Bank of America in Rochester, New York, allegedly represented a portion of the mortgage loan proceeds provided by Flaherty Funding at the September 12, 2008 closing, which defendants thereafter used to purchase a property at 1466 Southern Boulevard, Bronx, New York.  (*Id.*; *see also* Docket # 90 at 5, n.5).  Count Ten charges a violation of 18 U.S.C. § 1956(a)(1)(A)(i), and Count Eleven charges a violation of 18 U.S.C. § 1957.

## II.     The Bill of Particulars

In accordance with this Court's directives, the government provided further particularization concerning the two substantive mail fraud counts with which defendants Louissaint and Johnson are charged.  (Docket # 114).  Relevant to this decision, the bill of particulars specified that both closings occurred at the office of Malik & Associates in East Elmhurst, New York, which is located in the Eastern District of New York.  Present at the July 8, 2008 closing (Count Two) were the straw purchaser; the purported seller; defendant Johnson; a representative of Malik & Associates, the settlement agent for Flaherty Funding; and two named attorneys whose role and relationship to the participants were not identified.  The bill of

particulars stated that the closing documents, which were contemporaneously produced to the

defense and the Court, were signed and dated and given to the representative of Malik &

Associates, who thereafter provided them to a commercial interstate carrier for delivery to

Flaherty Funding in Rochester.  Flaherty Funding received the closing documents in Rochester

"a few days later."  The mortgage funds were released at the closing from Malik & Associates'

escrow account and paid "to various individuals and entities, including entities controlled by

defendants," at the purported seller's direction.  The government provided an attachment to the

bill of particulars reflecting the disposition of the mortgage proceeds, including the identities of

payees and the dates and amounts of payments.  (Docket # 114 at 2-4).

        The government's particularization with respect to Count Four is essentially

identical to Count Two with the exception of the date of the closing, September 12, 2008, and the

identities of those present at the closing:  the straw purchaser; the seller, defendant Louissaint

d/b/a Blackstone Corporation; defendant Johnson; a representative of Malik & Associates, the

settlement agent for Flaherty Funding; and two attorneys and another individual whose roles and

relationships to the participants are not further described.  (*Id.* at 5-7).

### III.    <u>Closing Documents</u>

        The copies of the closing documents relating to the two mail fraud counts that are

the subject of the bill of particulars (Counts Two and Four) reveal that numerous documents

allegedly executed at the closings clearly identify the lender as Flaherty Funding in Rochester,

New York.  For example, the closing documents relating to the July 8, 2008 closing include,

*inter alia*:

        • a HUD-1 Uniform Settlement statement certified and signed by
        the straw buyer and purported seller identifying the "Lender" as

"Flaherty Funding Corporation, 2595 Brighton Henrietta Town Line Road, Rochester, NY 14623," and the "Settlement Agent" as "MALIK & ASSOCIATES, PC";

• a Note signed by the straw buyer promising to repay $646,300 to Flaherty Funding Corporation, the identified Lender, in monthly mortgage payments, "at 2595 Brighton Henrietta Town Line Road, Rochester, New York 14623";

• a Mortgage signed by the straw buyer and notarized by defendant Johnson, identifying the straw buyer as the Borrower and Flaherty Funding, 2595 Brighton Henrietta Town Line Road, Rochester, New York 14623, as the Lender; the top of the mortgage contains language stating:

> After Recording Return To:
> Flaherty Funding Corporation
> 2595 Brighton Henrietta Town Line Road
> Rochester, New York 14623
> Loan Number: 080618010;

• a Truth-in-Lending Disclosure Statement identifying the "Creditor" as Flaherty Funding Corporation, with an address of 2595 Brighton Henrietta Town Line Road, Rochester, New York 14623, signed by the straw purchaser;

• a letter on Flaherty Funding letterhead signed by the straw purchaser acknowledging that Flaherty Funding has assigned, sold or transferred the right to collect mortgage payments to Chase;

• "Specific Closing Instructions" signed by the straw purchaser and the settlement agent representative providing, among other things, that the original HUD-1 Settlement Statement be sent within 24 hours of settlement to Flaherty Funding at 2595 Brighton Henrietta Town Line Road, Rochester, New York 14623;

• Title Insurance Policy bearing defendant Johnson's signature as "Authorized Officer or Licensed Agent" and identifying Flaherty Funding as the named "Insured."

The closing documents relating to the September 12, 2008 closing include, *inter alia*:

• a HUD-1 Uniform Settlement statement certified and signed by the straw buyer and purported seller identifying the "Lender" as "Flaherty Funding Corporation, 2595 Brighton Henrietta Town

8

Line Road, Rochester, NY 14623," and the "Settlement Agent" as
"MALIK & ASSOCIATES, PC";

• a Note signed by the straw buyer promising to repay $533,850 to
Flaherty Funding Corporation, the identified Lender, in monthly
mortgage payments, "at 2595 Brighton Henrietta Town Line Road,
Rochester, New York 14623";

• a Mortgage signed by the straw buyer and notarized by defendant
Johnson, identifying the straw buyer as the Borrower and Flaherty
Funding, 2595 Brighton Henrietta Town Line Road, Rochester,
New York 14623, as the Lender; the top of the mortgage contains
language stating:

> After Recording Return To:
> Flaherty Funding Corporation
> 2595 Brighton Henrietta Town Line Road
> Rochester, New York 14623
> Loan Number: 080714007;

• a Truth-in-Lending Disclosure Statement identifying the
"Creditor" as Flaherty Funding Corporation, with an address of
2595 Brighton Henrietta Town Line Road, Rochester, New York
14623, signed by the straw purchaser;

• a Title Insurance Policy identifying Flaherty Funding
Corporation as the named "Insured";

• "Specific Closing Instructions" signed by the straw purchaser and
the settlement agent representative providing, among other things,
that the original HUD-1 Settlement Statement be sent within 24
hours of settlement to Flaherty Funding at 2595 Brighton Henrietta
Town Line Road, Rochester, New York 14623;

• a letter on Flaherty Funding letterhead signed by the straw
purchaser acknowledging that Flaherty Funding has assigned, sold
or transferred the right to collect mortgage payments to Wells
Fargo;

• a Title Company Receipt bearing defendant Johnson's signature
relating to the receipt of various documents for recording.

**IV.**     **Defendants' Motion to Dismiss For Lack of Venue**

The Constitution requires criminal trials to be conducted in the district where the crime occurred. *See* U.S. Const. art. III, § 2, cl. 3 ("[t]he Trial of all crimes . . . shall be held in the State where the said Crimes shall have been committed"); *id.* at amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"); *see also* Fed. R. Crim. P. 18 ("the government must prosecute an offense in a district where the offense was committed"); *United States v. Bala*, 236 F.3d 87, 95 (2d Cir. 2000) ("[v]enue is proper in any district in which defendant committed the crime"). When an indictment contains multiple counts, the government must prove that venue is proper on each count by a preponderance of the evidence. *See United States v. Bala*, 236 F.3d at 95 ("the government must prove venue by a preponderance of the evidence"); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989) ("when a defendant is charged in more than one count, venue must be proper with respect to each count"), *cert. denied*, 493 U.S. 933 (1989).

**A.**     **The Mail Fraud Counts (Counts One, Two and Four)**

For purposes of this motion, defendants do not explicitly challenge the sufficiency of the mail fraud allegations to state mail fraud offenses. Indeed, the language of the grand jury's indictment properly states such offenses: Counts Two and Four allege that "for the purpose of executing . . . the scheme and artifice [to defraud Flaherty Funding], the defendants knowingly caused to be delivered to Flaherty Funding in Rochester, New York, by commercial interstate carrier according to the direction thereon, the closing documents." (Docket # 1 at 19, ¶ 3; 21, ¶ 3). *See United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 2d 444, 460 (D. Conn. 2002) ("[b]ecause the indictment tracks the statutory language, the nexus [between the

mailing and the fraudulent scheme] is sufficiently alleged").  Such a challenge, in any event,

likely would be premature before the government presents its evidence to a jury.  *United States v.*

*Afremov*, 2007 WL 3237630, *4 (D. Minn. 2007) ("[w]hether the prosecution can ultimately

prove that the mailings in question were in furtherance of the scheme to defraud is an issue for

trial, not a basis upon which to challenge the [i]ndictment"); *United States v. Mulhall*, 428

F. Supp. 2d 82, 84-85 (D. Conn. 2006) (rejecting motion to dismiss mail fraud counts on grounds

that mailings occurred after completion of fraud scheme; "the question of whether the mailing of

the checks in fact furthered [defendant's] alleged scheme to defraud is properly answered only

after the [g]overnment's proof has been adduced") (internal quotation omitted); *United States v.*

*Ganim*, 225 F. Supp. 2d 145, 160 (D. Conn. 2002) ("[t]he success or failure of the

[g]overnment's evidence to show an actual nexus between the statements and the scheme will be

determined at trial[;] [a] pretrial motion to dismiss is not the proper vehicle for testing the

[g]overnment's proof on this issue"); *United States v. Dempsey*, 768 F. Supp. 1256, 1273

(N.D. Ill. 1990) ("a mail fraud indictment should not be dismissed for failure to sufficiently

allege the 'in furtherance' element unless there is no conceivable evidence that the government

could adduce at trial in support thereof").  In this case, whether defendants could reasonably

foresee that the settlement agent would mail or arrange for the delivery of the closing documents

to the lender and whether such deliveries were "incident to an essential part of the scheme" are

factual questions as to which the government should be permitted to adduce evidence at trial.[3]

---

[3] Indeed, as described in detail above, the closing documents provided by the government are rife with references identifying the lender, suggesting that the alleged scheme participants would or should have been aware that the lender was Flaherty Funding, which was located in Rochester, New York.  Further, several of the closing documents contained instructions suggesting that the documents executed at the closing would be returned to Flaherty Funding.  Additionally, the indictment alleges an ongoing scheme spanning several months and involving several completed or attempted real estate transactions, and the government has taken the position that delivery of the closing documents furthered the scheme by lulling Flaherty Funding into believing that the real estate transactions were not fraudulent.  (Docket # 117 at 6-7).  Under these circumstances, factual questions plainly exist

*See*, *e.g.*, *United States v. Weiss*, 469 F. Supp. 2d 941, 951-52 (D. Colo. 2007) ("[a]t this [pretrial] stage of the proceeding, there is no evidence addressing whether receipt of the mailings lulled the lenders or concealed the truth from them[;] [i]t is sufficient, for purposes of a motion to dismiss, that these theories are legally cognizable and the [g]overnment may present evidence from which a reasonable jury might conclude that the mailings furthered the scheme in this manner"); *United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 2d at 460 ("whether the mailings were routine, intrinsically innocent, or required by law are factors for the jury to consider in determining whether they were made for the illicit purpose of executing a fraudulent scheme[;] . . . [t]he fact-dependent issue cannot be determined on a pre-trial motion to dismiss"); *United States v. Taylor*, 1992 WL 249969, *4 (S.D.N.Y. 1992) (denying pretrial motion to dismiss where defendants allegedly used the mails after receiving bribes "to deliver their end of the fraudulent deal"); *United States v. Best*, 660 F. Supp. 371, 374 (N.D. Ill. 1987) (denying motion to dismiss because mailings of deeds, mortgages and other documents to lender after loans were made and proceeds distributed could be seen as lulling mailings designed to conceal the fraud from examiners "by ensuring all normal documentation appeared in the loan files").

Here, the "mailings" charged in the two substantive mail fraud counts and the acts on which venue for those counts is premised in the Western District are the same – the delivery of the closing documents by commercial carrier to Flaherty Funding in Rochester, New York. At this stage of the proceedings, defendants do not challenge the adequacy of these deliveries as a jurisdictional basis for the mail fraud counts;[4] rather, their motion to dismiss is limited to a

---

that must be resolved by a jury regarding what the alleged scheme participants reasonably knew or should have known about Flaherty Funding and its ordinary business practices and when they obtained or should have obtained that knowledge.

[4] Although defendants question whether the government will be able to prove that they "caused" the settlement agent to mail the closing documents to Flaherty Funding in Rochester or that the fraud was still ongoing

venue challenge.  They argue that the delivery of the closing documents to the defrauded lender

in Rochester, which was facilitated by the settlement agent after the mortgage funds were

transferred and after the closings had been completed, are insufficient to give rise to venue in this

district.  They emphasize that defendants and their co-conspirators did not visit or telephone this

district, and that the closings occurred in the Eastern District of New York, the properties at issue

in the fraudulent scheme were located in the Eastern District, the straw buyers were recruited in

the Eastern District, and all the "buyer documents were prepared" in the Eastern District.

(Docket ## 87-1 at 25; 97 at 16; 116 at 4-5).  In its opposition papers, the government does not

contest that the only venue-predicating conduct for each count is the jurisdictional mailing.

In order for a mailing to qualify as a jurisdictional mailing under Section 1341,

the government must prove to the jury that (1) the defendant knowingly caused the mailing or, as

in this case, knowingly caused mail to be delivered by commercial interstate carrier according to

the direction thereon and (2) the mailing was in furtherance of the scheme.  18 U.S.C. § 1341;

*United States v. Altman*, 48 F.3d 96, 102-03 (2d Cir. 1995).  To establish the first element, the

government must demonstrate that the defendant "acted with knowledge that the use of the mails

would follow in the ordinary course of business, or where such use could reasonably be foreseen,

even though not actually intended."  *United States v. Slevin*, 106 F.3d 1086, 1089 (2d Cir. 1996)

(internal quotations omitted).  It is immaterial that a third-party, rather than a defendant, "wrote

and sent the letter at issue, providing, . . . the defendants could reasonably have foreseen that the

third-party would use the mail in the ordinary course of business as a result of defendants' act."

*United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989); *see also United States v. Rutigliano*,

790 F.3d 389, 397 (2d Cir. 2015) (rejecting defendants' contention that mailings "were not part

---

when the documents were caused to be delivered to the lender (Docket # 116 at 8), their papers make clear that they
do not seek dismissal of the charges on these grounds at this stage (Docket # 87-1 at 25).

of the mail fraud or the conspiracy to commit that crime, because [defendants] were not directly

responsible for the completion and mailing of the . . . forms"; "we have repeatedly held [that]

mail fraud schemes do not require a defendant to know about the specific mailing . . . [so long

as] the defendant acted with knowledge that the use of the mails will follow in the ordinary

course of business, or that such use can reasonably be foreseen, even though not actually

intended") (internal quotation omitted).

      To establish the second element, "[i]t is sufficient for the mailing to be incident to

an essential part of the scheme, or a step in the plot." *Schmuck v. United States*, 489 U.S. 705,

710-11 (1989) (internal quotations omitted).  The Supreme Court has made clear that the

mailing, even a "routine" and "innocent" one by a third-party, may qualify regardless of whether

it occurred after the defrauded funds had been transferred so long as it helped to ensure that the

victims maintained "faith" in the perpetrators of an ongoing fraud.  *Id.* at 712-15; *see also United

States v. Lane*, 474 U.S. 438, 451-52 (1986) ("[m]ailings occurring after receipt of the goods

obtained by fraud are within the statute if they 'were designed to lull the victims into a false

sense of security, postpone their ultimate complaint to the authorities, and therefore make the

apprehension of the defendants less likely than if no mailings had taken place'") (quoting *United

States v. Maze*, 414 U.S. 395, 403 (1974)); *United States v. Slevin*, 106 F.3d at 1089-90 ("[t]here

is no requirement that the mailings precede the fraud[;] . . . [w]here the frauds are not isolated or

unrelated swindles, postfraud mailings . . . may further the scheme by, for example, lulling the

victims into believing they received the services fraudulently promised . . . or by helping to keep

the scheme in operation by preserving a needed business relationship between a fraud victim and

the defendant") (internal citations omitted).

In this case, the same factual disputes that make the sufficiency of the jurisdictional mailing element unsuitable for determination on a pretrial motion to dismiss likewise make the issue of venue inappropriate for pretrial determination.[5]  If, after presentation of the government's evidence at trial, a delivery into the district of prosecution is a sufficient basis for a substantive mail fraud conviction, it should be sufficient for venue purposes as well.  In other words, if a jury determines that the defendants caused the delivery of the closing documents to Flaherty Funding in the Western District in furtherance of their fraudulent scheme, venue should properly lie in this district.  That logic is likely the reason for defendants' inability, noted by the government, to cite even one case granting a pretrial motion to dismiss a mail fraud charge for lack of venue where the charge explicitly alleged a mailing or delivery into the district of prosecution.  (*See* Docket # 117 at 3-4.)

Contrary to defendants' position, the Second Circuit's decision in *United States v. Brennan*, 183 F.3d 139 (2d Cir. 1999), does not counsel a different result.  In *Brennan*, the government sought to establish venue in the Eastern District of New York solely on the grounds that mailings to and from the Southern District of New York and from and to other states and countries "passed through" airports in the Eastern District.  *United States v. Brennan*, 183 F.3d at 146.  The Second Circuit rejected the government's attempt, stating:

> Rather than make a defendant like Brennan subject to prosecution in any district through which a mail truck carrying his mail happened to drive (or perhaps even in any district over which an airplane carrying the mail happened to fly, or in which it happened to make an interim stop), we think Congress's more particularized and careful phrasing in the mail fraud statute . . . is best read less expansively.  We therefore hold that prosecution under the mail fraud statute is permissible only in those districts in which a proscribed act occurs, *i.e.*, in which the defendant "places,"

---

[5]  There may be prosecutions in which the jurisdictional mailing charged is different from the mailing or delivery on which venue is premised.  For example, the government need not demonstrate that a venue-establishing act was committed within the applicable statute of limitations.  *See United States v. Rutigliano*, 790 F.3d at 398 n.4.

> "deposits," "causes to be deposited," "takes," or "receives" mail or
> *"knowingly causes" mail "to be delivered."*

*Id.* at 147 (emphasis added).  Insofar as 18 U.S.C. § 3237(a) may be read more expansively to

permit venue in any district through which mailings passed, the Second Circuit has made clear

that Section 3237(a) (the second paragraph) does not apply to the mail fraud statute and, if it did,

"might to that extent be unconstitutional."  *Id.* at 147-48.

Defendants argue that *Brennan* stands for the proposition that the "location of a

'receipt' or 'delivery' is only relevant in venue determination if it is a culpable act by a

defendant, not merely an 'receipt' or 'delivery' to a third person, even a 'victim,' as a

consequence of something being mailed to them."  (Docket ## 116 at 8; 97 at 23).  Although

defendants' exact argument is unclear – are they arguing that for a delivery in the Western

District to establish venue there, the defendants themselves had to physically hand the documents

to the carrier in the Eastern District or that they themselves had to receive delivery in the

Western District? – neither *Brennan* nor any other controlling law supports their position.

*Brennan* did not address this issue; rather, it dealt with the legitimacy of venue premised upon

the location of mail stops along the route from deposit to delivery.  In fact, as set forth above, the

holding of *Brennan* affirms that venue lies in those districts in which the defendant "knowingly

causes [mail] to be delivered by . . . such carrier according to the direction thereon" for the

purpose of executing a scheme to defraud.  *Id.* at 145 (quoting 18 U.S.C. § 1341).

Indeed, the Supreme Court rejected defendants' argument nearly a century ago.

In *Salinger v. Loisel*, 265 U.S. 224, 234 (1924), the Supreme Court addressed the amendment of

the mail fraud statute to proscribe the conduct at issue in this prosecution.  As the Court stated in

*Salinger*:

> Evidently Congress intended to make the statute more effective
> and to that end to change it so that where the letter is delivered
> according to the direction, such wrongful use of the mail may be
> dealt with in the district of the delivery as well as in that of the
> deposit.  A letter may be mailed without being delivered, but if it
> be delivered according to the address the person who causes the
> mailing causes the delivery.  Not only so, but the place at which he
> causes the delivery is the place at which it is brought about in
> regular course by the agency which he uses for the purpose.

*Id.* at 234.  The continued vitality of *Salinger* was affirmed by the Second Circuit as recently as

2005 in *United States v. Ramirez*, 420 F.3d 134, 147 n.12 (2d Cir. 2005), *cert. denied*, 546 U.S.

1113 (2006).  There, citing *Salinger*, the court noted, "the addition of the 'knowingly causes to

be delivered' clause was an express attempt by Congress to expand the proper venue for mail

fraud."  *Id.* (declining to reach question whether mail fraud may qualify as continuing offense

under first paragraph of § 3237(a)).  In other words, *Salinger* and *Ramirez* refute defendants'

argument that even if the government may establish that defendants "knowingly caused" the

delivery into the Western District of closing documents addressed to the lender in Rochester in

furtherance of the mail fraud scheme, something more is required for venue to lie in the Western

District.  *See*, *e.g.*, *United States v. Kim*, 246 F.3d 186, 193 (2d Cir. 2001) (venue may be proper

"in a district where defendants were not physically present during the commission of the offense,

[so long as it is] based on an element essential to the conduct the statute criminalizes") (internal

quotation omitted).  Moreover, venue for the Count One mail and wire fraud conspiracy charge

is also proper in this district because the same "deliveries" that defendants are charged with

causing in the substantive mail fraud counts are charged as overt acts in furtherance of the

conspiracy.  *See Rutigliano*, 790 F.3d at 397 ("for purposes of the conspiracy, venue may be

grounded in any act performed by any conspirator undertaken to further the object of the

conspiracy").

Defendants argue that the "substantial contacts" venue doctrine is inapplicable to the mail fraud counts because the charges are not continuing offenses and may be prosecuted only in the Eastern District of New York.  (Docket # 97 at 32-34).  The caselaw discussed above demonstrates, however, that the government has alleged a legally cognizable basis for venue in this district.  Under these circumstances, and where defendants have not expressly argued that trial in this district would be unfair (Docket # 87-1 at 25-27),[6] it is unclear whether the doctrine of substantial contacts has relevance to the venue issue.  As the Second Circuit has explained:

> [O]n occasion we have supplemented our venue inquiry with a 'substantial contacts' test that takes into account a number of factors . . . . [H]owever, that inquiry is made only if the defendant argues that his prosecution in the contested district will result in a hardship to him, prejudice him, or undermine the fairness of his trial.  Otherwise, prosecution for a continuing offense, "committed in more than one district," may occur "in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).

*Rutigliano*, 790 F.3d at 399 (internal quotations omitted); *see also United States v. Magassouba*, 619 F.3d 202, 205 n.2 (2d Cir. 2010) ("we need not apply [the substantial contacts] test here, in addition to the situs of the crime test, because [defendant] does not argue that his prosecution in the [contested district] . . . resulted in a hardship to him, prejudiced him, or undermined the fairness of his trial").

Assuming, as the Supreme Court suggested in *Salinger*, that the mail fraud counts may be viewed as continuing offenses theoretically prosecutable in either the Eastern District – where the closing documents were deposited for delivery with the commercial carrier – or the Western District – where the documents were delivered to the lender, application of the

---

[6]  As to this issue, defendants have at best alleged in a conclusory, speculative one sentence statement: "[t]o pick up this offense, and transport it to the Western District of New York is to risk losing the local knowledge and lore necessary to distinguish between fraudulent conduct and customary practice in a fiercely competitive market localized in the New York City area."  (Docket # 87-1 at 26-27).

substantial contacts test does not foreclose prosecution in this district.  *See United States v. Magassouba*, 619 F.3d at 205 ("[i]n those cases where 'the acts constituting the crime and the nature of the crime charged implicate more than one location, the Constitution does not command a single exclusive venue'") (quoting *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985)).  The factors to be considered under the substantial contacts analysis include:  (1) the site of the crime; (2) its elements and nature; (3) the place where the effect of the criminal conduct occurs; and (4) suitability of the venue chosen for accurate factfinding.  *United States v. Ramirez*, 420 F.3d at 139.  I do not disagree with defendants that the site of defendants' acts favors venue in the Eastern District, although the locus of the effect of the criminal conduct – the loss to Flaherty Funding of the loaned mortgage funds – favors this district.  The elements and nature of the offense factor does not weigh in favor of the Eastern District because, as discussed at length above, the clause of the mail fraud statute under which defendants are charged is the delivery, knowingly caused by them, of documents addressed to the defrauded lender in Rochester.  Finally, although preparing for trial may be marginally easier for the defense in the Eastern District of New York, the Western District of New York is certainly a nearby district, and defendants have not demonstrated how trial in the Western District would pose a hardship to them or jeopardize the fairness of their trial.  *See Rutigliano*, 790 F.3d at 400 ("[h]ere, 'we need not be concerned about jeopardizing the values underlying the substantial contacts tests because [the defendants cannot] argue that being prosecuted in the Southern District [as opposed to the Eastern District of New York] imposed an additional hardship on [them], prejudiced [them], or undermined the fairness of [their] trial'") (quoting *Ramirez*, 420 F.3d at 143).  Under these circumstances, I do not believe that application of the "substantial contacts" test demands

prosecution of the mail fraud counts only in the Eastern District of New York.  Accordingly, I recommend denial of defendants' motion to dismiss on this basis.

### B. The Wire Fraud Counts (Counts Three, Five, Eight and Nine)

Defendants' challenge to the wire fraud counts fares no better than their challenge to the mail fraud counts.  The "wires" charged in each of the substantive wire fraud counts and the acts on which venue for those counts is premised in the Western District are similar in nature and involve transmissions between Flaherty Funding located in Rochester, New York and its underwriters or bank, located in Pennsylvania, Florida and Texas.  (Docket # 1).  According to the government, Flaherty Funding's underwriters reviewed the fraudulent mortgage applications submitted as part of defendants' scheme and then notified Flaherty Funding by wire transmission whether the loans were approved or rejected.  In those instances where the loan applications were approved, Flaherty Funding transmitted wire transfer instructions to its bank in order to fund the mortgage.

As a general mater, venue for a substantive wire fraud count lies where the wire "begins its course, continues or ends," *Rutigliano*, 790 F.3d at 397, and the fact that none of the defendants' personal conduct occurred within a particular district does not necessarily preclude venue for a wire fraud charge in that district.  *United States v. Kim*, 246 F.3d at 192 (affirming district court's determination that wire is "transmitted" both where it was sent and where it was received).  Defendants nonetheless maintain that the wire communications between Flaherty Funding in Rochester, New York and its underwriters and banks are insufficient to give rise to venue in this district.  As with the mail fraud counts, defendants maintain that their conduct occurred solely in the Eastern District of New York and that the "internal communications"

between Flaherty Funding and its underwriters or bank were neither "caused" by defendants nor undertaken "in furtherance" of the scheme.  (Docket ## 87-1 at 25; 97 at 16; 116 at 4-5).

Similar to mail fraud, in order to establish wire fraud, the government must demonstrate that the defendant "caused" the wire transmission and that the wire was in furtherance of the scheme.  18 U.S.C. § 1343; *United States v. Reifler*, 446 F.3d 65, 95 (2d Cir. 2006).  To establish causation, it is sufficient for the government to demonstrate that the defendant acted "with knowledge that the use of the [wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Id.* at 96 (quoting *Pereira v. United States*, 347 U.S. 1, 8-9 (1954)).  Thus, "it is not necessary for the defendant to participate personally in the wire transmission, as long as it is reasonably foreseeable that the charged transmission would occur in the execution of the scheme." *United States v. Bahel*, 662 F.3d 610, 641-42 (2d Cir. 2011).  To establish that a wire is in furtherance of a scheme, the government need not establish that the wire is "an essential element of the scheme"; rather, it need only establish that the wire is "incident to an essential part of the scheme or a step in [the] plot." *United States v. Bahel*, 662 F.3d at 641 (quoting *Schmuck v. United States*, 489 U.S. at 710-11).

The mail and wire fraud statutes use similar language and are treated in an identical manner. *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) ("[t]he mail and wire fraud statutes share the same language in relevant part, and accordingly, we apply the same analysis to both sets of offenses here"); *Slevin*, 106 F.3d at 1088 ("[b]ecause these statutes [18 U.S.C. § 1341 and § 1343] use the same relevant language, they are analyzed in the same way"). Thus, I conclude that defendants' venue challenge to the wire fraud counts should be denied at this stage for the same reasons that their venue challenge to the mail fraud counts should be

21

denied:  the same factual disputes that make the sufficiency of the wire fraud allegations

unsuitable for determination on a pretrial motion to dismiss – whether defendants could

reasonably foresee the use of the wires and whether the wires were transmitted incident to an

essential part of the scheme – likewise make the issue of venue inappropriate for pretrial

determination.  If, after presentation of the government's evidence at trial, the wire transmissions

between Flaherty Funding and the other business entities are a sufficient basis on which to

convict defendants of the wire fraud offenses, they should be sufficient for venue purposes as

well.  In other words, if a jury determines that defendants "caused" the wire transmissions from

Flaherty Funding's underwriters to Flaherty Funding in the Western District and from Flaherty

Funding to its bank, and that such transmissions were in furtherance of their fraudulent scheme,

venue should properly lie in this district.

### C.    Money Laundering (Counts Ten and Eleven)

Count Ten charges Louissaint with money laundering in violation of 18 U.S.C.

§§ 1956 (a)(1)(A)(i) and 2 based upon a September 12, 2008 wire transfer of $173,951.86 from

HSBC Bank to Bank of America.  (Docket # 1 at 28).  The indictment alleges that Louissaint

knew that the wired funds were proceeds of mail and wire fraud, specifically, fraudulently

acquired mortgage loan proceeds from the closing of the 16404 107th Avenue property, and that

he conducted the wire transfer with the intent to promote the mail and wire fraud.  (*Id.* at 10,

¶ 19; 12, ¶ 27; 28, ¶ 2).  According to the indictment, the wired funds were subsequently used to

purchase property located in Bronx, New York.  (*Id.* at 12, ¶ 27).  Count Eleven charges

Louissaint with engaging in a monetary transaction knowing that it involved criminally derived

funds in violation of 18 U.S.C. §§ 1957 and 2, based upon the same financial transaction.  (*Id.* at

29-30).  As stated above, the bill of particulars specifies that the closing for the 16404 107th Avenue property occurred in the Eastern District of New York.  (Docket # 114 at 5, ¶ 1).

Louissaint maintains that venue for these money laundering charges is improper in the Western District of New York because the wire transfer involved proceeds from a real estate closing that occurred in the Eastern District of New York relating to property located in the Eastern District of New York, and the funds were ultimately used to finance the purchase of property located in the Southern District of New York.  (Docket # 87-1 at 23-24).  Louissaint maintains that these facts provide an insufficient basis for venue in the Western District of New York and that under *United States v. Cabrales*, 524 U.S. 1 (1998), the money laundering counts must be dismissed.  (*Id.*).

The government counters that venue in the Western District is proper because the funds were transferred by wire into a bank account located in this district.  (Docket # 90 at 5, 7-9).  According to the government, it will prove that Louissaint caused funds to be wired from an HSBC Bank account located in the New York City area, the escrow account of the settlement agent that handled the property closing of the 16404 107th Avenue property, to a Bank of America account located in Rochester, New York, and owned by a law firm located in Rochester, New York.  (*Id.* at 5 n.5).  The government maintains that the transaction posted on September 15, 2008 and that the funds were subsequently used to purchase property located in the New York City area.  (*Id.* and Government's Exhibit G).  According to the government, venue is proper in the district in which the funds were received, and the fact that the funds were derived from fraudulent conduct occurring outside of the district and used to purchase property outside of the district is irrelevant.  (*Id.* at 8).

Pursuant to 18 U.S.C. § 1956(i)(1),[7] venue for a money laundering charge is proper either in "any district in which the financial or monetary transaction is conducted" or in "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted."  18 U.S.C. § 1956(i)(1).  The statute further provides that a wire transfer of funds from "[one] place to another . . . shall constitute a single, continuing transaction, [and] [a]ny person who conducts . . . any portion of the transaction may be charged in any district in which the transaction takes place."  18 U.S.C. § 1956(i)(3).  Accordingly, venue for Counts Ten and Eleven is proper in "any district where any portion of the financial transaction occurred."[8]  *United States v. Farese*, 2014 WL 2154970, *1 (E.D.N.Y. 2014); *see also United States v. Hoskins*, 73 F. Supp. 3d 154, 167 (D. Conn. 2014) ("[a]ny person who conducts . . . any portion of the transaction may be charged in any district in which the transaction takes place") (quoting 18 U.S.C. § 1956(i)(3)).

In this case, the government has charged Louissaint with money laundering offenses based upon the wire transfer of funds from New York City to Rochester, which is located in the Western District of New York.  Venue is thus appropriate in the Western District of New York because it is a district in which a portion of the financial transaction occurred.  *See United States v. Farese*, 2014 WL 2154970 at *1 (venue appropriate in Eastern District of New York because check was delivered to cooperating witness in that district); *United States v. Black*, 469 F. Supp. 2d 513, 540 (N.D. Ill. 2006) (venue appropriate where funds were transferred to a

---

[7]  The venue provision was added to the money laundering statute in 2001.  *See Whitfield v. United States*, 543 U.S. 209, 217 (2005) (citing USA PATRIOT ACT, Pub. L. 107-56, § 1004, 115 Stat. 392).

[8]  It is unclear whether, in their reply, defendants concede that venue for the money laundering counts is properly placed in the Western District pursuant to the statutory venue provisions of 18 U.S.C. §§ 1956(i)(1)(A) and (i)(3).  They argue, in any event, that these counts should be venued in the same location as the mail and wire fraud counts.  (Docket # 97 at 7 n.1).

bank located in that district; "[v]enue is appropriate in the Northern District of Illinois . . . [because] the monetary transaction at issue was conducted in this [d]istrict[,] [t]he transaction concluded in Chicago when the funds were transmitted to [the bank]").  Whether the government ultimately can prove the circumstances of the transaction and Louissaint's involvement is a matter for the jury.  *United States v. Buske*, 2010 WL 3023364, *5 (E.D. Wis. 2010) (government sufficiently alleged facts in the indictment to support venue; "[w]hether the government can succeed in proving these facts at trial remains to be seen, but . . . the factual issue is properly decided by the jury in the first instance"); *United States v. Bronson*, 2007 WL 2455138, *4 (E.D.N.Y. 2007) ("[t]he [indictment] alleges facts sufficient to support venue because it alleges that the criminal activity occurred 'within the [contested district] and elsewhere'[;] . . . [t]he law of this [c]ircuit is clear that the [g]overnment's burden is satisfied with regard to pleading venue by alleging that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or information").

Moreover, Louissaint's reliance on *Cabrales* is misplaced.  In *Cabrales*, the financial transactions at issue occurred entirely in the state of Florida, although the funds were derived from criminal activity conducted in Missouri.  *United States v. Cabrales*, 524 U.S. at 4. The defendant was not charged with participating in any of the criminal conduct that occurred in Missouri, nor was she charged with transporting the funds from Missouri to Florida.  (*Id.*). Under those circumstances, the Supreme Court concluded that venue in Missouri was not proper because the financial transactions for which the defendant was charged were conducted within Florida, not Missouri.  *Id.* at 10.  In this case, by contrast, Louissaint is charged with transferring funds from one district to another.  Because the wire transfer occurred, in part, in this district,

25

venue is proper, and I recommend denial of Louissaint's motion to dismiss Counts Ten and Eleven.

## **CONCLUSION**

For the reasons stated above, I recommend that the district court deny defendants' motion to dismiss the indictment for lack of venue.  (Docket # 87).


_____
*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June 3, 2016

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

  **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

  **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[9]

  The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

  The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

  Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

           *s/Marian W. Payson*
           MARIAN W. PAYSON
          United States Magistrate Judge

Dated: Rochester, New York
    June 3, 2016

---

[9] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).